Case 4:21-cr-00543   Document 1   Filed on 11/16/21 in TXSD   Page 1 of 7

United States Courts
Southern District of Texas
FILED
*November 16, 2021*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Criminal No. |
| BIJAN RAJABI, | § § § | **4:21-cr-543** |
| Defendant. | § § | |

## INFORMATION

THE UNITED STATES CHARGES:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Paycheck Protection Program

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

2. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (Small Business Administration ("SBA") Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly

payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

3. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

## Economic Injury Disaster Loan Program

5. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

6. The CARES Act also authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

7. In order to obtain an EIDL, a qualifying business had to submit an application to the SBA and provide information about its operations, such as the number of employees, gross

revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant had to also certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

8. Applicants for EIDL assistance submitted their applications directly to the SBA, and the applications were processed by the agency with support from a government contractor. The amount of the loan was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods of the company, as described above. SBA directly issued any funds issued under an EIDL to the applicant company. A company could use EIDL funds for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the applicant company could not use EIDL funds for the same purpose as the PPP funds.

## The Defendant, Related Entities and Individuals

9. Defendant **BIJAN RAJABI** ("**RAJABI**") was a resident of Houston, Texas and was the owner of BRACC ACC LLC ("BRACC"), a Texas Limited Liability Company.

10. Amir Aqeel ("Aqeel") was a resident of Houston, Texas, and was a business associate of **RAJABI**.

11. Raheel Malik ("Malik") was a resident of Sugarland, Texas and was a manager of Fascare International, Inc., doing business as, Almeda Discount Store ("Almeda").

12. Almeda was a store located in Houston, Texas that sold a variety of items and offered cash checking services.

13. Mauricio Navia ("Navia") was a resident of Katy, Texas.

## COUNT ONE
### (18 U.S.C. § 371 - Conspiracy)

14. Paragraphs 1 through 13 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

15. Beginning in or around April 2020, and continuing until in or around October 2020, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**BIJAN RAJABI**

knowingly and willfully, that is, with the intent to further the objects of the conspiracy, conspired and agreed with Amir Aqeel, Mauricio Navia, Raheel Malik, and other individuals, known and unknown to the United States, to commit certain offenses against the United States, namely: to knowingly and intentionally devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

16. It was the purpose of the conspiracy for **RAJABI** and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent applications for PPP loans and (b) laundering the proceeds from the PPP loans in order to conceal and disguise the true nature and source of the loan proceeds.

### MANNER AND MEANS OF THE CONSPIRACY

17. The manner and means by which **RAJABI** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

18. **RAJABI,** Aqeel, Navia, Malik, and others submitted, and caused to be submitted, false and fraudulent PPP loan applications in the name of certain entities to various SBA-approved PPP lenders and companies. These applications contained false and fraudulent representations as to the number of employees and the average monthly payroll. As a result of these false and fraudulent applications, **RAJABI**'s co-conspirators, including Aqeel, obtained millions of dollars in fraudulent PPP loans.

19. As part of the scheme, **RAJABI** and Aqeel applied for a PPP loan on behalf of BRACC knowing that certain representations made in the PPP loan application—including the number of employees and average monthly payroll—were false and fraudulent. The false and fraudulent PPP loan application on behalf of BRACC was submitted via the use of interstate wires to a participating SBA approved lender that authorized a PPP loan in the amount of approximately $513,332. The $513,332 in PPP loan funds was deposited into an account in the name of BRACC.

20. As part of the scheme, **RAJABI**, Aqeel, Navia, Malik, and others agreed to and did launder PPP loan funds that were obtained via the fraudulent PPP loan applications by writing checks to fake employees and cashing those checks at Almeda.

21. In furtherance of the scheme, Aqeel directed **RAJABI** to write numerous checks from the BRACC account in which the PPP loan funds were deposited to fake employees. Aqeel and Navia provided the names of the fake employees to **RAJABI**. None of these employees—whose names were provided by Aqeel and/or Navia—ever worked for BRACC. In total, RAJABI wrote over 160 checks to fake employees.

22. As part of the scheme, **RAJABI**, Aqeel, and others also applied for an EIDL on behalf of BRACC knowing that certain representations made in the EIDL application—including the number of employees and gross revenue—were false and fraudulent. The false and fraudulent

EIDL application on behalf of BRACC was submitted via the use of interstate wires to the SBA, which authorized an EIDL in the amount of approximately $120,900. **RAJABI** used a portion of the EIDL funds to purchase two vehicles.

## OVERT ACTS

23.In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

24.On or about April 7, 2020, **RAJABI** and Aqeel exchanged text messages in which Aqeel instructed **RAJABI** to inflate the amounts for rent, payroll, and interest when applying for a PPP loan.

25.On or about June 5, 2020, **RAJABI** and Aqeel submitted a false and fraudulent PPP loan application on behalf of BRAAC to an SBA-approved lender.

26.On or about June 23, 2020, Navia sent an email to **RAJABI** with a fake employee list and attached several IRS Forms 1099 for various individuals.

16.On or about June 29, 2020, **RAJABI** and Aqeel exchanged text messages in which Aqeel provided a list of names, including Navia, which **RAJABI** used to write fake employee checks.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

17. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the United States gives notice that upon the defendant's conviction of Count One of this Information, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.

18. The United States also gives notice that it will seek a money judgment against the defendant.

19. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment.

Jennifer Lowery
Acting United States Attorney
Southern District of Texas

Joseph S. Beemsterboer
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: *Rodolfo Ramirez*
Rodolfo Ramirez
Assistant United States Attorney
Southern District of Texas
RRamirez3@usa.doj.gov
(713) 314-6024

_____
Della Sentilles
Louis Manzo
Trial Attorneys
Criminal Division, Fraud Section
Della.Sentilles@usdoj.gov
(202) 445-8793 (Sentilles)